**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**
JAMES J. WALDRON, CLERK
February 22, 2007
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| SAMI ABDELMASSIA, | CASE NO.: 01-39847 (NLW) |
| Debtor. |  |
| STEVEN P. KARTZMAN, | ADV. NO.: 05-6436 |
| Plaintiff, |  |
| v. |  |
| SAMI ABDELMASSIA, et al, | **OPINION** |
| Defendant(s). |  |

**Before:**   **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Adam G. Brief, Esq.
Mellinger, Sanders & Kartzman, LLC
101 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
Attorneys for Trustee

This matter came before the Court in connection with the Trustee's request for entry of a default judgment against the debtor, revoking his discharge under 11 U.S.C. §§ 727(d)(1)[1], and (d)(2). As set forth at greater length below, the Trustee's request to revoke the debtor's discharge is denied.

The Court has jurisdiction to review and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1874. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J). The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## STATEMENT OF FACTS

**A.    Procedural History**

The debtor, Sami Abdelmassia ("Debtor"), filed a voluntary Chapter 7 petition on August 31, 2001. Shortly thereafter Steven P. Kartzman ("Trustee") was appointed as the case trustee. It appears that the case was initially administered as a routine No Asset Chapter 7 case. A Meeting of Creditors pursuant to § 341(a) was held on October 5, 2001, and the Trustee's Report of No Assets was filed on October 10, 2001. Debtor was granted a discharge by order dated December 10, 2001 and the case was closed on February 21, 2002.

Over two and one-half years later, the Debtor moved to reopen his case to amend Schedule B of his Schedules of Assets and Liabilities to add his 100% interest in Sami Adbelmassia Included, Inc. ("SAI"). He claimed that SAI's sole asset was an arbitration proceeding against Merrill Lynch,

---

[1] Subsequent references to the Bankruptcy Code are denoted by section number only.

2

Pierce Fenner and Smith, Inc. ("Merrill Lynch"). Debtor also sought to amend Schedule C to claim the value of his shares in SAI as exempt property. In his motion to reopen, Debtor stated that in or about November, 2000 he transferred approximately $1,000,000 from his personal accounts into a Merrill Lynch account in the name of SAI. He claimed that he transferred his personal funds into a corporate entity on the advice of an accountant. The Debtor further claimed that all of the funds in the investment account were lost by Merrill Lynch, and that he did not disclose his SAI shares when he filed for bankruptcy because he thought his corporation was worthless. The Debtor also revealed that in March, 2003 he commenced an arbitration proceeding against Merrill Lynch.

Although not notified of the Debtor's motion to reopen, Merrill Lynch learned of it and filed a response that causes the Debtor's recital of the facts to appear less credible. First, Merrill Lynch pointed out that the Debtor's motion to reopen was filed only after Merrill Lynch informed the arbitrators that the Debtor's claims against Merrill Lynch were not disclosed in the bankruptcy case. Merrill Lynch also noted that in the arbitration proceeding the Debtor stated that he transferred his personal funds into SAI because he "was wary of losing his hard-earned nest egg in the event of a lawsuit or divorce." Third, Merrill Lynch advised that not only did SAI maintain a Merrill Lynch account from October, 2000 through December, 2001, but that the Debtor also maintained an individual account with Merrill Lynch from June, 2001 through December, 2001. Finally, according to Merrill Lynch, in August, 2001 when Debtor filed his Chapter 7 case, his individual account held 100 shares of Cisco stock.

By order dated December 20, 2004, the Court reopened the case and permitted the amendments to the schedules. The Trustee was subsequently reappointed on December 29, 2004, and embarked upon his efforts to determine the benefit to the estate of the arbitration proceeding

against Merrill Lynch. The Trustee determined that the arbitration proceeding was a valuable asset and thereafter notified creditors to present their proofs of claim. Because the Debtor did not schedule his shares in SAI when he first filed his bankruptcy petition, the Trustee objected to the Debtor's claim for exemption of the SAI shares. The Trustee's objection was sustained, and an order was entered on March 7, 2005 denying the exemption. The Trustee's investigation also resulted in the instant adversary which, inter alia, seeks revocation of Debtor's discharge.

### B. Basis for Revocation of Discharge

In support of his request to revoke the discharge, the Trustee emphasizes the Debtor's repeated failures to disclose the true state of his financial affairs. He points out that the Debtor omitted his shares in SAI both in Schedule B and in his Statement of Financial Affairs. The Trustee also advises that despite the Trustee's questioning at the Meeting of Creditors, the Debtor failed to disclose his ownership of SAI. Likewise, the Debtor did not identify any claims against Merrill Lynch on Schedule B or in his Statement of Financial Affairs. Indeed, on Schedule B, under the category "other contingent and unliquidated claims of every nature...", the Debtor indicated that he held no such claims. Nor did the Debtor inform the Trustee of his claim against Merrill Lynch when questioned by the Trustee at the Meeting of Creditors.

Similarly, the Debtor failed to list his personal account at Merrill Lynch on Schedule B. Under the category that requires a debtor to describe "checking, savings and other financial accounts...", the Debtor only listed a checking account at Fleet Bank.

The Trustee's investigation also revealed that the undisclosed Merrill Lynch investment accounts had considerable value at the time that the Debtor filed for Chapter 7 relief. The Trustee

4

determined that on the petition date, August 31, 2001, the SAI account at Merrill Lynch had a value of $178,142.04 (Brief Cert., Ex. A). Further, some time thereafter the Debtor transferred the funds to a TD Waterhouse Account which had an account value of $252,489.85 as of November 30, 2001 (Id., Ex. B).

On December 28, 2005, the trustee filed an adversary proceeding for various forms of relief including revocation of the Debtor's Chapter 7 discharge based upon: §§ 727(d)(1) and (d)(2). At the hearing regarding revocation of the Debtor's discharge, the Trustee argued that the time bar in § 727(e) did not apply since the case was not properly closed because the Debtor failed to disclose property of the estate.

## DISCUSSION

Two issues are before the Court: (i) whether the Trustee has met the criteria for revocation of discharge under § 727(d), and (ii) whether revocation is barred by the time limitation in § 727(e).

I. **Revocation of Discharge**

For the trustee to obtain the revocation of a previously granted discharge, the fraud committed by the debtor must have been such that if the Court had been aware of the fraud, the discharge would not have been granted. Gibson v. Barber, 104 B.R. 425, (425 Bankr. N.D. Fla. 1989) citing In re Peli, 31 B.R. 952 (Bankr. E.D.N.Y. 1986); 4 Collier on Bankruptcy, ¶ 727.04 (15th Ed.). After consideration of the facts presented by the Trustee, this Court concludes that if timely discovered, the Debtor's conduct would have warranted denial of his discharge under § 727(a)(2) for concealment of property of the debtor, and under § 727(a)(4) for making a false oath or account.

5

Further, if timely discovered within the time constraints imposed by § 727(e)(1) or (e)(2), the Debtor's conduct would have warranted revocation of his discharge.

Under § 727(d)(1), after the notice and a hearing, the Court shall revoke a debtor's discharge if: "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." The Trustee has easily demonstrated that the requirements of § 727(d)(1) are met. As recounted earlier, the Debtor omitted any mention of SAI, and the Merrill Lynch investment accounts held by SAI and the Debtor. The Debtor did not identify any of these interests on Schedule B or his Statement of Financials Affairs, and did not disclose them to the Trustee at the Meeting of Creditors. The Trustee filed a No Asset Report and after the Debtor's discharge was granted, the case was closed. Only as a consequence of the Debtor's motion to reopen did the Trustee learn that the Debtor held valuable undisclosed assets when he filed his Chapter 7 petition.

Similarly, the Trustee has demonstrated sufficient facts to warrant revocation of discharge under § 727(d)(2) which provides that a discharge may be revoked if:

> the debtor acquired property that is property of the estate, or became entitled to acquired property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee, ....

Focusing simply on the Debtor's failure to disclose his claims against Merrill Lynch, and failure to surrender any part of the TD Waterhouse account, it is readily apparent that revocation of discharge is an appropriate remedy under § 727(d)(2). The Debtor claimed that he did not list his shares in SAI because the trading losses allegedly caused by Merrill Lynch made his shares worthless. However, it is a reasonable inference that an individual astute enough to amass $1,000,000 in a

6

Merrill Lynch investment account would also recognize a potential action against Merrill Lynch for trading losses. Thus, the Debtor's statements amount to an admission that at the petition date, he knew that he possessed a claim against Merrill Lynch. Similarly, his failure to inform the Trustee of the existence of the TD Waterhouse account falls well within § 727(d)(2).

II.     **Statutory Time Limits**

The language of § 727(e) is unambiguous, and it provides that:

> (e)    The trustee, a creditor, or the United States trustee may request a discharge ---
> (1)    under subsection (d)(1) of this section within one year after such discharge is granted; or
> (2)    under subsection (d)(2) or (d)(3) of this section before the later of —
>     (A)    one year after the granting of such discharge; and
>     (B)    the date the case is closed.

In the matter at hand, discharge was granted on December 10, 2001. The case was closed on February 21, 2002. However, the Trustee's complaint was not filed until December 28, 2005. On its face, § 727(e) bars the Trustee's complaint to revoke the Debtor's discharge. With regard to revocation under § 727(d)(1), the Trustee's complaint was filed well after the discharge date of December 10, 2001. Likewise, with regard to revocation under § 727(d)(2), the Trustee's complaint was filed long after February 21, 2002, the date the case was closed.

The Trustee's solution to the time bar contained in § 727(e) is twofold. He suggests that the limitations period in § 727(e) was never triggered because the Debtor's undisclosed assets were

never fully administered, and therefore the case was not properly closed.[2] Alternatively, the Trustee suggests that the Court may apply the equitable tolling doctrine to toll the limitations period for the length of time that the Debtor concealed his interests in SAI.[3]

The Trustee cites Caughey v. Succa (In re Succa), 125 B.R. 168 (Bankr. W.D. Tex. 1991) as the basis for his argument. In that case, the debtor did not disclose his interest in a condemnation proceeding, and did not turn over to the trustee the funds received as a result of the condemnation award. The debtor moved to dismiss the Trustee's complaint to revoke his discharge on the basis that the one year statute of limitations set forth in § 727(e)(2) barred the complaint. The Court first found that the case had not been properly closed because the undisclosed assets had not been fully administered when the closing order was entered. 125 B.R. at 171. The Court based its conclusion on case authority that found that the statute of limitations in § 546(a)(2)[4] does not begin to run unless the case has been properly closed (i.e., estate assets are fully administered). Id. at 170-171. Next, the Court found that the doctrine of equitable tolling permitted the tolling of the statute of limitations because of the debtor's concealment of his interest in the condemnation proceeding. Id. at 174. The Court found persuasive case authority that employed the equitable tolling doctrine to toll the statute of limitations in § 546(a). Id. at 171-172. Additionally, the Court pointed out that

---

[2] § 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."

[3] "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Seitzinger v. Reading Hospital and Medical Center, 165 F.3d 236, 240 (3d Cir. 1999).

[4] § 546(a)(2) provides: (a) An action or proceeding under section 544, 545, 547, 548 or 553 of the title may not be commenced after the earlier of – (2) the time the case is closed or dismissed.

8

under § 554(d) property of the estate that is neither abandoned nor administered in the case remains property of the estate. The Court observed that the underlying policy of this section is to prevent a debtor from profiting from his fraud by having undisclosed assets deemed abandoned, and that this policy should apply to other Code sections when a debtor's fraudulent conduct might be present. Id. at 173. Finally, the Court relied upon the statement in Holmberg v. Armbecht, 327 U.S. 392, 397 (1946) that the "equitable tolling doctrine is read into every federal statute of limitations." The analysis performed by the Court in Succa was adopted by the Court in Dwyer v. Peebles (In re Peebles), 224 B.R. 519, 523 (Bankr. D. Mass. 1998), which also found that the statute of limitations in § 727(e)(2) could be equitably tolled.

However, the majority of cases that have considered the issues identified above, have concluded that neither a case closed with an unadministered asset nor the equitable tolling doctrine tolls the running of the time limits in § 727(e). See, e.g. Hadlock v. Dolliver (In re Dolliver), 255 B.R. 251 (Bankr. D. Me. 2000); Towers v. Boyd (In re Boyd), 243 B.R. 756 (N.D. Cal. 2000); Dahar v. Bevis (In re Bevis), 242 B.R. 808 (Bankr. D.N.H. 1999)(and cases cited therein); Casciato-Northrup v. Phillips (In re Phillips), 233 B.R. 712 (Bankr. W.D. Tex. 1999); Davis v. Johnson (In re Johnson), 187 B.R. 984 (Bankr. S.D. Cal. 1995). Because the Court finds the majority's analysis, as set forth below, to be more persuasive, it finds the Trustee's complaint untimely and denies his request to revoke the Debtor's discharge.

With regard to the time limitation in § 727(e)(1), the majority's reasoning is that the express statutory language presumes that the party seeking revocation did not know of the fraud until after discharge, and it therefore is inappropriate to use the equitable tolling doctrine. The Court in Bevis cogently elaborated on the issue as follows:

> Reading the doctrine of equitable tolling into § 727(e)(1) appears to

9

> upset a decision already made by Congress. Section 727(e)(1), when read in conjunction with § 727(d)(1), appears already to account for circumstances that equitable tolling is designed to remedy. Section 727(d)(1), by its express terms, is not applicable unless the party requesting the revocation of a debtor's discharge did not know of the operative fraud until after the granting of a discharge. Thus, the application of § 727(d)(1) always involves a party who has not discovered fraud until some period after the debtor receives his or her discharge. Yet § 727(e)(1) clearly imposes a one-year time limit beginning from the date of the debtor's discharge, notwithstanding the fact that the party requesting revocation has not discovered the relevant fraud until some time after discharge. Accordingly, when § 727(e)(1) is placed against the backdrop of § 727(d)(1), it appears that Congress did not intend for equitable tolling to apply to § 727(e)(1).

Bevis, 242 B.R. at 809.

In a similar vein, some Courts hold that Code § 727(e)(1) is not merely a statute of limitations, but an essential prerequisite to the proceeding. In re Ford, 159 B.R. 590, 592 (Bankr. D. Ore. 1993); In re Barrup, 53 B.R. 215, 219 (Bankr. D. Vt. 1985)(citing In re Santos, 24 B.R. 688 (Bankr. D.R.I. 1982)).

Courts also discern support for the conclusion that equitable tolling does not apply from Federal Rules of Bankruptcy Procedure 9024 and 9006. Apex Wholesale Inc. v. Blanchard (In re Blanchard), 241 B.R. 461, 465 (Bankr. S.D. Cal. 1999); In re Phillips, 233 B.R. 712, 716-717 (Bankr. W.D. Tx. 1999). Although Rule 9024 makes Federal Rule of Civil Procedure 60 applicable to bankruptcy proceedings, it specifically provides that complaints to revoke discharges "may be filed only within the time allowed by § 727(e) of the Code." Fed. R. Bankr. Pro. 9024. Further, these courts point out that although Rule 9006 permits Courts to exercise discretion to enlarge time periods, the rule plainly states that courts "may not enlarge the time for taking action under Rule ... 9024." Fed. R. Bankr. Pro. 9006.

The majority of courts that have considered application of equitable tolling to § 727(e)(2)

have similarly concluded that the doctrine does not toll that subsection's time limit. See, e.g., Humphreys v. Stedham (In re Stedham), 327 B.R. 889, 904 (Bankr. W.D. Tenn. 2005); Dollinger, 255 B.R. at 256-257; Bevis, 242 B.R. at 809; Blanchard, 241 B.R. at 465; Johnson, 187 B.R. at 986-988. These courts agree that equitable tolling generally applies to every federal statute, but view its applicability to be narrowed by the decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991).

One of the issues examined in Lampf was whether the statute of limitations applicable to a private claim under Rule 10(b) of the Security Exchange Act of 1934 ("1934 Act") could be subject to equitable tolling. The Court first concluded that the statutes of limitations prevalent in the 1934 Act provided the proper limitations period. 501 U.S. at 359-361. That is, the Court determined that the appropriate limitations period required that a suit be brought within one year of the discovery of facts constituting the cause of action, and within three years after the cause of action accrued. Id. In rejecting application of equitable tolling to this limitations period the Court stated:

> Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1- and 3-year structure.
> The 1-year period, by its terms, begin after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling ... Because the purpose is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

501 U.S. at 363.

Applying this analysis to § 727(e)(2), courts have determined that the time limitations contained therein are intended to be limits of repose that are not subject to equitable tolling. The Court in Blanchard explained that:

> Unlike a statute of limitations which begins running upon accrual of the cause of action, the limitation period set forth in § 727(e)(2) sets

11

>an outside limit after which, regardless of whether the cause of action has accrued, the cause of action is extinguished. It is conceivable that the time limitation set forth in § 727(e)(2) may run before the plaintiff discovers that a debtor has committed a fraud. The result promotes a finality policy that is consistent with a statute of repose.

Blanchard, 241 B.R. at 465.

Further supporting the understanding that § 727(e)(2) functions as a statute of repose is the point made in Bevis that § 727(e)(2) time limits depend on when the debtor is discharged and when his case is closed, which are events wholly unrelated to the fraudulent actions that give rise to a § 727(d)(2) cause of action. 242 B.R. at 810. The conclusion reached in Bevis further suggests to this Court that § 727(e) embodies a Congressional policy favoring finality. Similarly persuasive is the finding that the structure and language of § 727(d) and § 727(e) express a Congressional intent that equitable tolling not apply. See Phillips, 233 B.R. at 716; Johnson, 187 B.R. at 988. The Court in Johnson pointed out that the cause of action under § 727(d)(2) requires that the debtor have concealed property from the Trustee. 187 B.R. at 988. It determined that if that act of concealment forms the basis for equitable tolling, then the limitations period in § 727(e)(2) is effectively erased from the statute. Id. Such a result is plainly at odds with the clear language of § 727(e)(2) and the policy of finality which underlies the statute.

III.    **Effect of § 350(a)**

The Court in Succa concluded that the debtor's fraudulent concealment of assets resulted in an inability to fully administer estate assets, and therefore the case was not properly closed under § 350 so that the time limits in § 727(d)(2) never began to run. 125 B.R. at 171. This Court respectfully disagrees, for largely the reasons described above. If concealment of an asset, or failure to surrender an asset causes a case to never close such that the time limits of § 727(e) do not start

to run, then § 727(e) is rendered nugatory. This cannot be what Congress intended. See, Stedman, 327 B.R. at 903; Dolliver, 255 B.R. at 254-255; Bevis, 242 B.R. at 811-812; Towers v. Boyd (In re Boyd), 243 B.R. 756, 765 (N.D. Cal. 2000).

The Court acknowledges that its ruling permits the Debtor to retain the benefit of his discharge despite the fact that his conduct does not warrant such relief. However, three points can be made. First, a statutory remedy, though generally effective, will at times be ineffective. As the Court in Bevis points out, a clash of two dominant bankruptcy policies inheres in § 727(d) and § 727(e). On the one hand, the Bankruptcy Code favors discharge only for honest debtors, but on the other hand, the Bankruptcy Code favors finality in order to insure the debtor's fresh start. 242 B.R. at 810-811. By its plain wording of § 727(e), Congress has expressed a policy choice in favor of finality, and it is not the province of this Court to override that choice. Second, the Debtor, though discharged has not reaped the financial reward for concealing estate property. The Trustee has brought the arbitration proceeds into the estate for the benefit of creditors. Third, if timely and appropriate, the Debtor's conduct can likely be the subject of prosecution for bankruptcy crime under 18 U.S.C. § 152.

## CONCLUSION

Because the Court finds that the case was properly closed notwithstanding the Debtor's concealment of estate assets, and that equitable tolling is not applicable to § 727(e), it finds that the Trustee's cause of action to revoke the Debtor's discharge is time-barred.